**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | CASE NO. 6:09-bk-14833-KSJ |
| **THE VUE-ORLANDO, LLC**, a Delaware limited liability company, | CHAPTER 11 |
| Debtor. _____/ | EMERGENCY RELIEF REQUESTED HEARING REQUESTED BY 11/18/09 |

**MOTION OF DEBTOR SEEKING ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING FROM THE DIP LENDERS ON AN INTERIM BASIS PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE; (B) PROVIDING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS; AND (C) APPROVING THE FORM AND METHOD OF NOTICE THEREOF AND REQUEST FOR EMERGENCY HEARING**

**AND**

**CERTIFICATE OF NECESSITY OF**
**REQUEST FOR EMERGENCY HEARING**

**THE VUE-ORLANDO, LLC**, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), by and through its undersigned counsel, and pursuant to sections 105 and 364 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014, *Federal Rules of Bankruptcy Procedure*, hereby files this motion requesting authority to obtain credit, incur debt, and grant liens and requests an emergency hearing on the motion (the "Motion").

A.  The Motion seeks authorization and approval of the debtor-in-possession loan (the "DIP Loan"), on the terms consistent with those set forth in the Debtor-in-Possession Loan Agreement (the "DIP Loan Agreement"), and the other DIP Loan Documents, as defined by the DIP Loan Agreement, as they may be modified from time to time. A copy of the DIP Loan Agreement may be obtained upon request to the undersigned counsel and has been served upon

1

the Committee and the United States Trustee prior to the hearing on November 18, 2009. The "DIP Lenders" shall be Sovereign Bank ("Sovereign"), Comerica Bank ("Comerica"), Great American Insurance Company ("GAIC"), KeyBank National Association ("Key Bank"), Charter One Bank, N.A. ("Charter One"), the International Commercial Bank of China, New York, Commercebank, N.A. ("ICBC"), and Great American Life Insurance Company ("GAILC") (collectively, the "DIP Lenders"). The advances made under the DIP Loan Agreement shall be available, among other things, to pay (a) Debtor's ordinary course ongoing operating expenses; (b) certain administrative fees and expenses approved by the Court. Among other conditions precedent to the DIP Loan is that the Court shall have entered an order in form and content reasonably satisfactory to the DIP Lenders.

      B.      The Motion seeks an order:[1]

           (i)      That the allowed claims (the "DIP Superpriority Claim") of the DIP Lenders under the DIP Loan Documents shall have priority, as provided for in Section 364(c) of the Bankruptcy Code over any and all other administrative expenses, except for a carve-out for unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(the "Carve-Out");

           (ii)      That the liens of the DIP Lenders shall be, and be deemed immediately secured by, first-priority liens (the "DIP Liens"), as provided for in Sections 364(c) and (d) of the Bankruptcy Code, upon all the Debtor's property and all of the Debtor's accounts receivable, contract rights, general intangibles, property and proceeds of any kind, created or arising on or after the Petition Date (the "Property");

---

[1] This Motion contains a summary of the salient terms of the DIP Loan Agreement and is qualified in its entirety by reference to the provisions of the DIP Loan Agreement and the proposed Order attached hereto.

(iii)    If necessary, that adequate protection, pursuant to 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code, shall be granted to those entities, if any, holding existing liens or claims upon the Property, which liens and claims are to be junior liens to be granted to the DIP Lenders pursuant and subject to the terms of the Order; and

(iv)    That a hearing (the "Hearing"), pursuant to Bankruptcy Rule 4001 shall be held on the Motion for this Court to consider entry of an order (the "DIP Loan Order") approving the DIP Loan, on an interim basis, as set forth herein and in the DIP Loan Agreement.  A copy of the proposed DIP Loan Order is attached to the original of this Motion and filed with this Court as **<u>Exhibit "A"</u>**.

In support of its Motion, the Debtor respectfully represents as follows:

## **<u>BANKRUPTCY RULE 4001 SUMMARY OF RELIEF REQUESTED</u>**

Pursuant to Bankruptcy Rule 4001(c)(1)(B), a concise statement of material provisions of the proposed DIP Loan Agreement and form of DIP Loan Order is as follows:

A.    **<u>Interest Rate</u>**:  A rate per annum equal to the sum of (a) the Prime Rate Margin (currently zero) and (b) the greater of (i) the Prime Rate or (ii) one percent (1%) in excess of the Federal Funds Effective Rate (the "Applicable Rate").  (*See* DIP Loan Agreement § 2.1).  The Default Rate equals three percentage points (3%) higher than the Applicable Rate.  (*See id.*, § 5.1)

B.    **<u>Maturity:</u>**    March 15, 2010 (Scott-issues with this).  (*See id.*, § 4.8)

C.    **<u>Events of Default:</u>**    Failure to make payment when due, breach of any representations or warranty made by the Debtor, a material adverse change occurs with respect to the Debtor or the Property, any act that adversely affects the DIP Loan Order, or failure by the

Debtor to comply in all material respects with each and all of the terms of any DIP Loan Order. (*See id.*, § 19.1).

D. **Liens:** The DIP Lenders shall have first priority liens under Sections 364 (c) and (d) on the Property as identified in the DIP Loan Order and DIP Loan Agreement. (*See id.*, § 4.13).

E. **Borrowing Limits:** Up to principal amount of One Million Six Hundred and Seven Thousand Two Hundred and Five Dollars ($1,607,205.00). (*See id.*, § 4.1)

F. **Borrowing Conditions:** Debtor agrees that DIP Lenders' obligation to open and fund the DIP Loan is conditioned on: (1) execution of the DIP Loan Documents; (2) filing the Motion in a timely manner; (3) approval of the Budget, as described below; and (4) there are no uncured default or event of defaults under the DIP Loan Agreement. (*See id.*, § 8.1).

G. **Priming Liens Under Section 364(d):** The DIP Lenders shall have first priority liens under Sections 364 (c) and (d) on the Property as identified in the DIP Loan Order and DIP Loan Agreement. (*See id.*, § 4.13).

H. **Adequate Protection:** Debtor does not believe that it will be necessary to provide adequate protection to any entity in exchange for the DIP Liens. However, if ordered by this Court, the DIP Loan Agreement allows the Debtor to make such payments.

I. **Waiver of Automatic Stay:** The Order will provide that the automatic stay terminates five (5) business days after notice is given of the occurrence of an event default unless the Court holds that no event of default occurred.

J. **Section 506(c) Limitations:** Claims under 506(c) are deemed waived.

K. **Indemnity Provisions:** The DIP Lenders are entitled to be indemnified and held harmless for certain liabilities, obligations, losses, damages, penalties, actions, judgments,

suits, costs, expenses or disbursements with respect to the execution, delivery, enforcement, performance, preservation of rights and administration of the DIP Loan Documents, and to other indemnification provisions as more particularly described in the DIP Loan Agreement. The DIP Lenders shall have first priority liens under Sections 364 (c) and (d) on the Property as identified in the DIP Loan Order and DIP Loan Agreement. (*See id.*, § 26.4).

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2. The Debtor continues to operate as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and this Court's order authorizing it to continue doing business as a debtor-in-possession.

## Background

3. On October 1, 2009 (the "Petition Date"), Sovereign, Comerica, Mega International Commercial Bank Co. Ltd, NY ("Mega"), Charter One, GAIC, and Great American Financial Resources, Inc. ("GAFR")(collectively, the "Petitioning Creditors"), filed a Chapter 7 involuntary petition for relief for the Debtor, pursuant to 11 U.S.C. § 303(b)(the "Involuntary Petition"). (Doc. No. 1).

4. On November 2, 2009, the Debtor filed its Emergency Motion to Convert Case to Chapter 11 ("Conversion Motion"). (Doc. No. 13).

5. On November 4, 2009, the Court entered an order granting the Conversion Motion. (Doc. No. 16).

6. The Debtor is the owner of a 36-story, 375 unit luxury residential condominium building located in the heart of downtown Orlando, which is known as the The Vue at Lake Eola

("The Vue"). The Vue also boasts a variety of amenities, including but not limited to: a roof-top pool, tennis court, observation deck, large fitness center, as well as a concierge and 24-hour doorman (the "Amenities").

7. As of the Petition Date, the Debtor owned the Amenities, 165 residential Units (the "Units") and associated parking spaces.

8. In 2008, sales of units slowed considerably and the Debtor's cash flow was unable to keep up with its loans. Furthermore, and as a result of a variety of lawsuits that resulted in judgments, the Debtor was further hindered from selling additional condominium units.

9. The Debtor defaulted pre-petition under its loan documents for, among other defaults, failing to pay the monthly payments that were due thereunder (the "Loan Documents"). As a result of the defaults, the senior lenders accelerated the remaining payments owing under the Loan Documents.

10. As of September 4, 2009, the Debtor owes all the holders/lenders under Note-A and Note-B the sum of $45,852,272.16, plus accrued interest, late fees, costs and attorneys' fees (the "Indebtedness"). The Indebtedness is owing to the Senior Lenders without any offset, deduction, counterclaim or defense.

11. The Petitioning Creditors are all senior lenders of the Debtor.

12. The Debtor and Petitioning Creditors have been negotiating a resolution of certain matters related to the loan obligations and going forward operations. On November 2, 2009, Petitioning Creditors notified Debtor that all requisite approvals required to consummate the parties' agreement had been received.

13. On November 8, 2009, the Debtor received a Debtor-in-Possession Loan Commitment in the amount of One Million and Six Hundred and Seven Thousand Two Hundred and Five Dollars ($1,607,205.00) from the DIP Lenders.

## Relief Requested

### A. Detailed Summary of DIP Loan Agreement

14. By this Motion, the Debtor seeks the issuance and entry of an Order of this Court granting the Debtor the authority to obtain debtor-in-possession financing under the terms and provisions of the DIP Loan Agreement and DIP Loan Documents, as defined in the DIP Loan Agreement. The salient provisions of the DIP Loan Agreement are as follows:

a. **Borrower:** The Vue-Orlando, LLC.

b. **DIP Lenders**: Sovereign, Comerica, GAIC, KeyBank National Association, Charter One Bank, N.A., the International Commercial Bank of China, New York, Commercebank, N.A., and Great American Life Insurance Company.

c. **DIP Loan**: A first priority secured credit facility to be provided to the Borrower with a maximum credit amount of One Million Six Hundred and Seven Thousand Two Hundred and Five Dollars ($1,607,205.00).

d. **Maturity of the DIP Loan**: March 15, 2010.

e. **Use of Proceeds**: The DIP Loan shall be used, among other things, to pay (a) Debtor's ordinary course ongoing operating expenses; and (2) certain administrative fees and expenses approved by the Court.

f. **Security:** Except for the Carve-Out, the DIP Loan shall be secured in accordance with 364(d) of the Bankruptcy Code by valid, binding, continuing, enforceable, fully perfected and unavoidable first-priority senior priming security interests in, and liens upon the Property.

g. **Carve-Out**:  As discussed in more detail below, the DIP Lenders' liens will be subject to a Carve-out for certain U.S. Trustees' fees and Clerk of the Bankruptcy Court's fees.

h. **Interest Rate**:  A rate per annum equal to the sum of (a) the Prime Rate Margin and (b) the greater of (i) the Prime Rate or (ii) one percent (1%) in excess of the Federal Funds Effective Rate (the "Applicable Rate"). The Default Rate equals three percentage points (3%) higher than the Applicable Rate.

i. **Mandatory Repayments**: The obligations are due and payable on the Maturity Date.

j. **Conditions to Closing and Funding**: Debtor agrees that DIP Lenders' obligation to open and fund the DIP Loan is conditioned on: (1) execution of the DIP Loan Documents; (2) filing the Motion in a timely manner; (3) approval of the Budget, as described below; and (4) there are no uncured default or event of defaults under the DIP Loan Agreement.

k. **Events of Default**: Failure to make payment when due, breach of any representations or warranty made by the Debtor, a material adverse change occurs with respect to the Debtor or the Property, any act that adversely affects the DIP Loan Order, or failure by the Debtor to comply in all material respects with each and all of the terms of any DIP Loan Order.

**B.    The Critical Need for the DIP Loan**

15. The Debtor is in need of funds to cover: (i) working capital shortfalls; (ii) currently due insurance premiums; (iii) homeowner association assessments; (iv) employee salary and independent contractor wages; (v) required utility payments; and (vi) professional fees. Continued operation and maintenance is necessary to preserve the going concern value of the Property which the Debtor believes accounts for the substantial portion of the current value of the estate.

16. The Debtor needs these additional funds to pay these post-petition, ordinary-course expenses. The DIP Loan is intended to keep operations running for a five to six month period until a planned sale of the Property.

**C.   Approval Under Sections 364(c)(2) and (d) of the Bankruptcy Code.**

17. Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, or combination of the foregoing.

18. Section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur post-petition debt on a senior or "priming" basis if: (1) the debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *See* 11 U.S.C. § 364(d)(1).

19. As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the Hearing will show that a working capital facility of the type needed in this chapter 11 case could not have been obtained on any other basis.

20. The Debtor proposes to obtain financing under the DIP Loan and DIP Loan Documents and the DIP Loan Order by seeking, pursuant to section 364(c)(1) of the Bankruptcy Code, to provide for a DIP Superpriority Claim.

21.     In addition, the Debtor is seeking authority, pursuant to section 364(d) of the Bankruptcy Code, to prime any and all valid liens which may exist on the Property. Accordingly, Debtor seeks authority to grant adequate protection to any entity whose liens or claims are being primed by the DIP Loan (the Debtor does not concede that any entity is entitled to adequate protection).

**D.     The Debtor's Lack of Alternative Financing.**

22.     It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions. *See In re Lyondell Chem. Co.*, No. 09-10023 (Bankr.S.D.N.Y. 2009). Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.N.D.Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b). *See In re Plabell Rubber Prods.*, *Inc.*, 137 B.R. 897, 899-900 (Bankr.N.D.Ohio 1992).

23.     Despite its diligent efforts in seeking unsecured or secured credit, the Debtor was unable to secure any additional debtor-in-possession financing from any source, other than the DIP Loan. Accordingly, the Debtor submits that terms of the DIP Loan Agreement are the only terms available to the Debtor.

**E.     Use of the DIP Loan Proceeds**

24.     The DIP Loan Order provides that, upon finalizing and executing the DIP Loan Documents, the Debtor will immediately be authorized to borrow the amount of available borrowing under the DIP Loan Agreement.

25.     Attached to the original of this Motion and filed with this Court as **Exhibit "B"** is an operating budget (the "Budget") for the period of November 2009 through April 2010. The Budget has been prepared by the Debtor and represents the Debtor's projections of those costs which are reasonable and necessary for the Debtors' continued operations during the Budget period. The DIP Loan will be used to provide the liquidity necessary to fund the amounts set forth in the Budget.

26.     The DIP Lenders have reviewed the Budget and have no objection to the same.

**F.    Good Faith**

27.     The Debtor and DIP Lenders have negotiated the terms and conditions of the proposed credit extension in good faith; the terms and conditions of such credit extension are fair and reasonable and are supported by reasonably equivalent value. Any credit extended by the DIP Lenders pursuant to the terms of this Motion will have been extended in "good faith" (as that term is used in § 364(e) of the Bankruptcy Code).

**G.    Request for Modification of Automatic Stay**

28.     As set forth more fully in the proposed DIP Loan Order, the proposed DIP Loan Agreement contemplates a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code to permit the DIP Lenders to take certain actions required or permitted by the Order. More specifically, the Order provides the DIP Lenders with relief from the automatic stay upon the occurrence of specified events of default and the Debtor's failure to cure or contest same successfully to allow the DIP Lenders, *inter alia*, to enforce certain remedies against the Property, without having to obtain any further order of this Court. The Order further provides that prior to the exercise of any enforcement of liquidation remedies against the

Property, the DIP Lenders shall be required to give five (5) business days' written notice to each of counsel for the Debtor and U.S. Trustee, as provided for in the DIP Loan Documents.

29. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Order.

**H.    Request for Waiver of Stay**

30. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this motion. Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." As set forth above, the DIP Loan is essential to prevent considerable damage to the Debtor's operations and the value of its Property. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten (10) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

31. Upon court approval of this Motion, the Debtor and DIP Lenders will execute the DIP Loan Agreement and any related documents. All terms not defined herein shall be as set forth in the DIP Lenders' DIP Loan Agreement.

32. Upon entry of a non-appealable order approving the Motion, the Debtor agrees that the automatic stay of Bankruptcy Code § 362 shall be lifted to allow the DIP Lenders and the Debtor to consummate this Loan.

**CERTIFICATE OF NECESSITY OF**
**REQUEST FOR EMERGENCY HEARING**

33. The DIP Lenders and Debtor believe that the best result for creditors can be obtained by a controlled liquidation which occurs while the Debtor is open and operating.

34. Continued operation of the Debtor's business will enable the Debtor to solicit the highest possible offer for the Property; however, continued operation requires additional advances from the DIP Lenders to pay operating expenses.

35. In order to continue vital operations, the Debtor must pay current employees and independent contractors who are owed pre-petition as well as post-petition wages.[2] Additionally, in order to protect the value of the Property, the Debtor is required to pay its currently due insurance premiums. The DIP Loan is needed to pay these critical past and currently due bills.

36. Debtor has been negotiating with the DIP Lenders since Petition Date; however, it could not file this Motion until the DIP Lenders fully funded the DIP Loan. The DIP Lenders fully funded the DIP Loan on November 2, 2009.

37. The Debtor estimates that approximately 15 minutes will be necessary for a hearing on this Motion.

38. The Debtor and counsel are prepared to appear on two hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

**WHEREFORE**, Debtor respectfully requests this Court enter an Order granting the following:

A. Authorize the Debtor to borrow up to One Million Six Hundred and Seven Thousand Two Hundred and Five Dollars ($1,607,205.00) from the DIP Lender on a secured basis, pursuant to the terms of this Motion and the DIP Lenders' DIP Loan Agreement;

B. Authorize the Debtor to obtain such post-petition financing and incur post-petition indebtedness, which financing and indebtedness due and owing by the Debtor to the DIP Lenders

---

[2] On November 3, 2009, the Debtor filed its Emergency Motion to Pay Employee GAP Wages.

shall: (i) pursuant to § 364(c)(1) of the Bankruptcy Code, have priority (except as to agreed carve-out for U.S. Trustee fees) over any and all administrative expenses; and (ii) pursuant to § 364(d)(1) of the Bankruptcy Code, be secured by the DIP Lien in the Property and all of the Debtor's accounts receivable, contract rights, general intangibles, property and proceeds of any kind, created or arising on or after the Petition Date;

C.    Authorize the Debtor to execute a security agreement, loan agreement, and such other documents, instruments, and agreements as are necessary to evidence the obligation to repay the DIP Loan made by DIP Lenders pursuant to this Motion and to grant and perfect liens on the pledged assets and proceeds, and to perform all such other acts as reasonably may be required in connection with the credit to be provided pursuant to this Motion;

D.    Grant relief from the automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lenders and the Debtor to implement the terms of this Motion; and

E.    Grant the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of this Motion.

**RESPECTFULLY SUBMITTED** this 12th day of November 2009.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
Florida Bar No. 984469
rshuker@lseblaw.com
Justin M. Luna, Esquire
Florida Bar No. 0037131
jluna@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
P. O. Box 3353 (32802-3353)
Orlando, Florida  32801
Telephone:  407-481-5800
Facsimile:  407-481-5801
Attorneys for the Debtor

14

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | CASE NO.  6:09-bk-14833-KSJ |
| THE VUE-ORLANDO, LLC, a Delaware limited liability company, | CHAPTER 11 |
| | EMERGENCY RELIEF REQUESTED |
| Debtor._____/ | HEARING REQUESTED BY 11/18/09 |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of **MOTION OF DEBTOR SEEKING ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING FROM THE DIP LENDERS ON AN INTERIM BASIS PURSUANT TO SECTION 105 AND 364 OF THE BANKRUPTCY CODE; (B) PROVIDING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS; AND (3) APPROVING THE FORM AND METHOD OF NOTICE THEREOF AND REQUEST FOR EMERGENCY HEARING** has been furnished by facsimile, electronic transmission and/or U.S. First Class mail, postage prepaid, to:  The Vue-Orlando, LLC, Attn: Eric Moskowitz, WESTMINSTER PARTNERS II LLC, PO Box 624, Mundelein, IL  60060; Sovereign Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL  33131 a/f petitioning creditor; Sovereign Bank, c/o Louis T. DeLucia, Schiff Hardin LLP, 900 Third Avenue, 23rd Floor, New York, NY 10022 a/f petitioning creditor; Comerica Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL  33131 a/f petitioning creditor; Christopher G. Daniel, Charter One Bank, 53 State Street – MBS 970, Boston, MA  02109;  Mega International Commercial Bank Co., Ltd., NY Branch, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL  33131 a/f petitioning creditor; Jack Rubenbauer, Director, Great American Insurance Company, One East 4th St., 3rd Floor, Cincinnati, OH  45202; Key Bank, c/o James S. Grodin, Foley & Lardner, P.O. Box 2193, Orlando, FL  32802-2193; Churchill Development Group, c/o Robert S. Hoofman, P.O. Box 3146, Orlando, FL  32802-3146; Richard B. Webber II, Zimmerman Kiser & Sutcliffe, 315 East Robinson St., Ste. 600, Orlando, FL  32801-4341; First Bank & Trust Company, Attn:  Jeffrey W. Warren, P.O. Box 3913, Tampa, FL  33601-3913; the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801; and the list of 20 largest unsecured creditors and the Local Rule 1007-2 Parties-in-Interest List, as shown on the matrices attached to the original of this motion filed with the Court, this 12th day of November 2009.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
