# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| In re: | CASE NO. 6:09-14833-KSJ |
| THE VUE-ORLANDO, LLC, | CHAPTER 11 |
|     Debtor. | |

## ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVING BID PROCEDURES, SALE PROCEDURES AND BID PROTECTIONS

**THIS CASE** came on for final evidentiary hearing on December 9, 2009 ("Hearing"), on the motion of **THE VUE-ORLANDO, LLC** (the "Debtor"), for entry of an order: authorizing and approving bid procedures, sale procedures and bid protections (the "Motion") (Doc. No. 55). The Hearing was scheduled as a final evidentiary hearing and notice of the Hearing was provided by electronic transmission, facsimile, and/or United States first class mail to the secured creditors, the twenty largest unsecured creditors, all parties in interest, and the United States Trustee.

Upon consideration of the Motion, the objections filed by Becky Kwitowski and Clifford Kwitowski (the "Kwitowski Objection")(Doc. No. 83), First Bank and Trust Company of Illinois ("First Bank")(Doc. No. 88), and The Vue At Lake Eola Condominium Association, Inc. (Doc. No. 93)(collectively, the "Objections"), the Response of KeyBank, N.A. to the First Bank objection (Doc. No. 92), the *ore tenus* modifications to the Motion announced by the Debtor at the Hearing (the "Modifications"), the evidence taken at the Hearing, and the position of the United States Trustee and all creditors and parties in interest present at the Hearing, and to the extent the Objections were filed, all such objections have been compromised, withdrawn or overruled, and having found due and

proper notice of the Motion and Hearing, IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:

A. This Court has subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334.

B. Consideration of the Motion and the relief requested therein in a core proceeding pursuant to 28 U.S.C. §157(b)(2).

C. Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Sufficient notice of the Motion and the Hearing was given in accordance with the applicable Bankruptcy Rules and Local Bankruptcy Rules of this Court and as otherwise required by applicable law. No other or additional notice is required.

E. The findings and conclusions set forth in this Order constitute the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

F. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. The Motion and the Modifications are granted to the extent provided herein, the Kwitowski Objection is overruled, and all other objections are denied as moot based on the Modifications as set forth herein.

2. The Bidding Procedures, Notice Procedures, and Sale Procedures are approved as set forth in **Exhibit "A"** attached hereto.

3. Any party who intends to submit an offer to purchase the Assets must comply with the procedures set forth in **Exhibit "A"** of this Order, to be considered at the Auction and Sale Hearing.

4. The Debtor and/or the Debtor's Auctioneer shall have the bid packages, including the marketing materials, available for distribution in electronic form no later than January 10, 2010.

5. All interested parties and potential bidders have until 4:00 pm on March 10, 2010 (the "Bid Deadline") to submit a Qualified Bid to the Notice Parties, as defined in the attached **Exhibit "A"**.

6. All interested parties shall have the right to review Qualified Bids after such time that the Debtor and/or the Debtor's Auctioneer deems a bid a Qualified Bid, as defined in the attached **Exhibit "A", but such time shall be no later than March 11, 2010**. The Auction shall be held on or before March 15, 2010 at 11:00 A.M. The Auction shall not be delayed, cancelled or moved without an order from this Court.

7. The initial minimum bid at the Auction must represent a purchase price of Twenty Million Dollars and No Cents ($20,000,000.00).

8. Any bidder shall keep any information obtained from the Debtor, any other party, or their respective attorneys, representatives, employees, or affiliates, in connection with due diligence conducted related to the sale of the Assets, confidential.

9. First Bank and Trust Company of Illinois and Keybank N.A. (collectively, the "Note B Lender") and the Pre-Petition Note A Lenders entered into a co-lender Agreement in February 2006 (the "Co-Lender Agreement"). The outstanding balance due to the Pre-Petition Note A Lenders under the Pre-Petition Secured Loan Document totals $31,411,319.05 as of the Petition Date, plus any interest, fees or other charges accruing thereon as authorized under the Pre-Petition Secured Loan Documents (the " Note A Pre-Petition Indebtedness"). The outstanding balance due to the Note B Lender totals $29,538,333.32 as of the Petition Date, plus any interest, fees or other charges accruing thereon (the "Note B Pre-Petition Indebtedness").

10. KeyBank, N.A., as the administrative agent under the Co-Lender Agreement, as further defined by the DIP Credit Agreement (the "Agent"), and pursuant to Section 363(k), shall have the exclusive right to credit bid on behalf of the Pre-Petition Note A Lenders and the Note B Lender.

11. However, the entry of this Order shall have no impact on any and all rights and obligations of the parties under any enforceable agreement executed by and between the Pre-Petition Note A Lenders and the Note B Lender, including but not limited to the Co-Lender Agreement.

12. The sale of the Assets shall include any and all personal property of the Debtor which shall be disclosed on the Debtor's schedules and shall be disclosed in bid packages to potential bidders.

13. Within ten (10) days of entry of this Order, the Debtor shall amend its schedules identifying with specificity, any and all personal property which the Debtor intends to sell at the Auction. Within ten (10) days after the filing the schedule, the Vue at Lake Eola Condominium Association (the "Association") may file its objections related solely to the inclusion of designated personal property, if any, with this Court. If any objections are filed by the Association, a hearing shall be scheduled on the objections. Notwithstanding the foregoing, the Assets shall not include common elements or Association property as defined in Section 718.103, Florida Statutes. common areas, property of the existing unit owners or of the Association, personal property of the Association or which a unit owner (other than the Debtor) has an undivided interest or which may constitute an appurtenance, or such items which are required to be delivered to the Association at turnover in accordance with Section 718.301(4), Florida Statutes.

14. The sale of the Assets shall be free and clear of any and all security interests, mortgages, judgments, encumbrances, interests, restrictions of any kind and liens (collectively, "Interests"), except for 2009 and subsequent years' *ad valorem* taxes and except for: covenants, rights, and obligations arising from or out of that certain Declaration of Condominium of The Vue at Lake Eola, a Condominium recorded in Official Records Book 09444, Page 3009, Public Records of Orange County, Florida, any timely and duly recorded amendments thereto and the Association's by-laws, articles of incorporation and rules and regulations (the "Condominium Declarations"), the provisions of the provisions of the Florida Condominium Act, Chapter 718, Florida Statutes ("Act"); the provisions of Chapter 61B, Florida Administrative Code ("Administrative Rules");  The Interests, after the sale of the Assets and entry of a final Sale Order, shall attach to the proceeds of the purchase price paid by the Successful Bidder of the Assets in the order of their priority, with the same validity, force and effect which they now have as against the Debtor, subject to any claims and defenses of the Debtor may possess with respect thereto.

15. The approval of the sale of the Assets to the Successful Bidder shall be heard on March 17, 2009 at 10:15 A.M. (the "Sale Hearing").

16. The Pre-Filing Agreement referenced in Exhibit B to the Motion shall not be assumed by the Debtor by entry of this Order and the Court makes no determination as to the validity of or any rights of any parties regarding the Pre-Filing Agreement.

17.     This Court finds that notice of the Hearing was sufficient and that this Court has jurisdiction over this matter.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**DONE and ORDERED** on December 28, 2009.

**KAREN S. JENNEMANN**
United States Bankruptcy Judge

Copies to:

The Vue-Orlando, LLC, Attn: Eric Moskowitz, WESTMINSTER PARTNERS II LLC, PO Box 624, Mundelein, IL 60060;

R. Scott Shuker, Esq. and Justin M. Luna, Esq., Latham, Shuker, Eden & Beaudine, LLP (attorneys for Debtor), P.O. BOX 3353, Orlando, FL 32802-3353;

Sovereign Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL 33131;

Sovereign Bank, c/o Louis T. DeLucia, Schiff Hardin LLP, 900 Third Avenue, 23rd Floor, New York, NY 10022;

Comerica Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL 33131;

Christopher G. Daniel, Charter One Bank, 53 State Street – MBS 970, Boston, MA 02109;

Mega International Commercial Bank Co., Ltd., NY Branch, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL 33131;

Jack Rubenbauer, Director, Great American Insurance Company, One East 4th St., 3rd Floor, Cincinnati, OH 45202;

Key Bank, c/o James S. Grodin, Foley & Lardner, P.O. Box 2193, Orlando, FL 32802-2193;

Churchill Development Group, c/o Robert S. Hoofman, P.O. Box 3146, Orlando, FL 32802-3146;

Richard B. Webber II, Zimmerman Kiser & Sutcliffe, 315 East Robinson St., Ste. 600, Orlando, FL 32801-4341;

First Bank & Trust Company, Attn: Jeffrey W. Warren, P.O. Box 3913, Tampa, FL 33601-3913

All Creditors; and

U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801.

# EXHIBIT A

## BIDDING PROCEDURES FOR THE ASSETS

### BID PROCEDURES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest and best bids for the sale by the Debtor, The Vue -Orlando, LLC "Seller" or the "Debtor") of certain personal property and real property located in 150 East Robinson Street, Orlando, Florida, as more particularly described on **Exhibit A** attached to the original of the Bid Procedures Motion and the schedule of personal property as disclosed on Schedule B of the Debtor's filed schedules and any amendments thereto (collectively, the "Assets"). As set forth in more detail below, the Debtor will conduct an auction (the "Auction") for the sale (the "Sale") of the Assets if one or more Qualified Bids (as defined below) are timely submitted, which Sale is subject to the Order Granting Debtor's Motion for Order Approving Bid Procedures, Sale Procedures and Bid Protections ("Bid Procedures Order")(Doc. No.   ).

### BREAK-UP FEE

The Debtor has retained the right, subject to the prior approval of the Agent, as defined in the Bid Procedures Order, to enter into a "stalking horse" agreement (the "Stalking Horse Agreement"), with a bidder to be selected by the Debtor, with the prior written approval of the Agent (the "Stalking Horse Bidder"), governing the purchase of the Assets by the Stalking Horse Bidder. The Stalking Horse Agreement may provide for a break-up fee plus fees and expenses incurred by the Stalking Horse Bidder in connection with the Auction and Sale to be paid to the Stalking Horse Bidder in the event that the Stalking Horse Bidder is not the purchaser of the Assets (the "Break-Up Fee"). The amount of the Break-Up Fee may be considered by the Debtor in determining the highest and best bid and the net value that the Debtor and their estates will realize at any Auction.

### OBTAINING DUE DILIGENCE ACCESS

The Debtor (or a broker retained by the Debtor) shall afford each Bidder reasonable due diligence information, including, without limitation, the due diligence information provided to the Stalking Horse Bidder. Upon request, the Debtor shall provide site access to each potential bidder to the extent requested to conduct reasonable due diligence. The due diligence period will end on the Bid Deadline (as defined below).

The Debtor shall give each potential bidder reasonable access to all written due diligence information provided to another potential bidder, and shall provide substantially the same site access to each bidder. The Debtor reserves the right to require that potential bidders sign a form of nondisclosure agreement approved by the Debtor and the Agent as a condition to receiving due diligence information. The Debtor shall coordinate all reasonable requests for additional information and due diligence access from potential bidders through its court approved Auctioneers and other professionals.

No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

## BID DEADLINE

The deadline for submitting bids by a Bidder shall be March 10, 2010 at 4:00 p.m. (Eastern Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Bidder that desires to make a bid shall deliver written copies of its bid to (i) the Debtor, c/o The Vue-Orlando, LLC, 150 East Robinson Street, Orlando, Florida; Attn: Charles Johanns; (ii) the Debtor's Auctioneer, Fisher Auction Company Inc., 619 East Atlantic Boulevard, Pompano Beach, Florida 33060; Attn Lamar Fisher**;** Fax: 954-782-8143; (iii) the Debtor's bankruptcy counsel, Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Avenue, Suite 600, P.O. Box 3353, Orlando, Florida, 32802-3353; Attn: R. Scott Shuker and Justin M. Luna; Fax: 407-481-5801; (iv) counsel to the Agent, KeyBank National Association, Foley & Lardner, LLP, 111 North Orange Avenue, Suite 1800, Orlando, Florida 32801; Attn: James Grodin, Esq.; Fax: 407-648-1743; (v) counsel for all other Pre-Petition Note A Lenders, Schiff Hardin LLP, 900 Third Avenue, Twenty-Third Floor, New York, NY 10022, Attn: Louis T. DeLucia and Alyson M. Fiedler, Fax: 212-753-5044; (vi) counsel for First Bank and Trust Company of Illinois, Bush Ross, P.A., 1801 N. Highland Avenue, Tampa, Florida 33602, Attn: Jeffrey Warren and Adam Lawton Alpert, Fax: 813-223-9620; and  (vii) counsel for any committee appointed in these cases (the "Notice Parties").

## QUALIFIED BID REQUIREMENTS

A bid must be a written irrevocable offer (i) stating that the bidder offers as a starting bid of at least $20,000,000 (the "Initial Bid") to consummate a Sale; (ii) confirming that the offer shall remain open and irrevocable until the closing; of a Sale to the Successful Bidder or the Next highest Bidder (both as defined below); (iii) enclosing a copy of the proposed bid; and (iv) enclosing a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtor and the Agent equal to a percentage of the amount of the Qualified Bid to be set by the Debtor (after consultation with the Agent)(the "Minimum Deposit").  No liens of any creditors of the Debtor shall attach or be deemed to attach to the Minimum Deposit until and unless a Sale to the bidder making the Minimum Deposit occurs or the bidder forfeits its deposit in accordance with the procedures set forth herein.  All bids will be considered, but the Agent reserves its right to reject any or all bids.

To be a Qualified Bid, any bid for the Assets must:

> (a) be a written irrevocable offer from a bidder (i) stating that the bidder offers to consummate a Sale; (ii) confirming that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder (as defined below); (iii) enclosing a copy of the proposed bid; and (iv) enclosing a certified or bank check,

2

wire transfer, or letter of credit reasonably acceptable to the Debtor and the Agent equal to the Minimum Deposit;

(b)     provide for the purchase of all of the Assets and such purchase may not have any conditions to close not present in the Stalking Horse Agreement or Asset Purchase Agreement provided by the Debtor (whichever is applicable), unless waived by the Debtor and the Agent;

(c)     not be conditioned on due diligence or financing;

(d)     not request or entitle the subsequent bidder to any break-up fee or expense reimbursement;

(e)     disclose the identity of each person and/or entity bidding for the Assets or participating in connection with a bid, and the terms of any such participation;

(f)     contain written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale;

(g)     offer a cash amount set by the Debtor, or other consideration acceptable to the Debtor and the Agent;

(h)     be accompanied by an acknowledgement that the Bidder has had an opportunity to conduct due diligence, does not require further due diligence and has relied solely upon its own independent review in making its bid; and

(i)     be accompanied by a signed contract substantially in the form of the Stalking Horse Agreement and marked to show any changes made thereto.

A bid received from a Bidder that meets the requirements set fourth above will be considered a "<u>Qualified Bid</u>," and the highest and best such bid, the "<u>Highest Qualified Bid</u>." A Qualified Bid shall not be a bid of an "insider" or "affiliate" of the Debtor under section 101 of the Bankruptcy Code unless otherwise consented to by the Agent, in writing. All Qualified Bids shall be available for review by any party in interest, subject to the terms of confidentiality set forth in the Order of the Bankruptcy Court approving the Bid Procedures.

## AUCTION

If at least one Qualified Bid by a bidder other than the Stalking Horse Bidder is received by the Bid Deadline, the Auction with respect to the Assets shall take place at the date and time designated by the Debtor or the Debtor's Auctioneer (but no later than March 15, 2010 at 11:00 a.m. (Eastern Time). The Debtor, with the consent of the Agent, may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the Sale Hearing, only after approval by the Bankruptcy Court and

serving such notice on all Auction Notice Parties (as such term is defined in the Procedures Motion). The Debtor will provide appropriate notice to each of the bidders and other invitees of the, date, time, and place for the Auction.

If no Qualified Bid other than the Stalking Horse bid is received by the Bid Deadline, then the Auction will not be held, and, pursuant to the Stalking Horse Agreement, but subject to the entry of the Sale Order, the Stalking Horse Bidder shall purchase, acquire and accept from Seller, and the Seller shall sell, transfer, assign, convey and deliver to the Stalking Horse Bidder (or its designated affiliate or affiliates) all of Seller's right, title and interest in, to and under the Assets, free and clear of all liens (except for the Permitted Exceptions as defined in the Stalking Horse Agreement) to the extent permissible under section 363(f) of the Bankruptcy Code, and free and clear of any claims or interests the Debtor may have had, except for the obligations, rights, and covenants expressly provided in the Bid Procedures Order.

A party may participate at the Auction only if it is a bidder who has submitted a Qualified Bid. The Debtor will evaluate all Qualified Bids received and, with the consent of the Agent, may select the Qualified Bid that reflects the highest and best offer, as determined by the Debtor and the Agent as the "Starting Auction Bid" for the Assets.

The bidding at the Auction shall start at the Initial Bid as disclosed by the Debtor to all bidders prior to commencement of the Auction. The bidding will continue in incremental amounts of not less than $100,000 (unless otherwise agreed to in writing by the Agent), until there is a Successful Bid (as defined below) and a Next Highest Bid (as defined below). At the Auction, Bidders will be permitted to increase their bids. All bids subsequent to the Starting Auction Bid, whether oral or written, shall be deemed to constitute valid modifications or amendments to the signed contract previously submitted by such bidder. Any party holding a valid lien against the Assets shall be entitled to credit bid at the Auction pursuant to section 363(k) of the Bankruptcy Code, and the Agent shall have the exclusive right to credit bid on behalf of the Pre-Petition Note A Lenders and Note B Lender as defined in the Bid Procedures Order, provided, however, that to the extent applicable, such credit must be accompanied by a cash payment equal to (a) the amount necessary to pay liens senior to the liens of the secured lender that is credit bidding; and (b) the amount necessary to pay the excess cash portion of the Stalking Horse Bid and the Break-Up Fee. The Agent shall have the exclusive right to credit bid up to the full amount permitted by the Bankruptcy Code on behalf of the Debtor's Pre-Petition Note A Lenders[1] and Note B Lenders, as defined by the Bid Procedures Motion. Any credit bid submitted at the Auction will be on substantially the same terms as contained in the Stalking Horse Agreement.

Prior to concluding the Auction, the Debtor shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the sale process, and the best interests of the Debtor's estates and creditors and (ii) determine, subject to the approval of the Agent, which bid is the highest and best bid (the

4

"Successful Bid") and the next highest and best offer after the Successful Bid (the "Next Highest Bid"). In evaluating bids, the Debtor may consider bids for less than all of the Assets, as well as bids for all of the Assets, so as to maximize the value received for the Assets.

At or prior to the Auction, the Debtor, with the consent of the Agent, may adopt other rules for the Auction that, in their reasonable judgment, will better promote the goals of the Auction. All such rules shall be fully disclosed to all bidders and will provide that the procedures must be fair and open. Nothing herein shall prohibit the Debtor from meeting privately with any bidders to negotiate the terms of the bids.

Immediately upon selection of the Successful Bid, the bidder making the Successful Bid (the "Successful Bidder") shall provide the Debtor with the Minimum Deposit in immediately available funds to be placed in escrow.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered. Neither the Debtor nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

## ACCEPTANCE OF THE SUCCESSFUL BID

Following the Auction or a determination that the Stalking Horse, if any, is the Successful Bidder, but not later than March 17, 2010, the Sale Hearing will be held. If a timely objection to the Auction Notice is received, the Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which the Debtor will seek certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted in a fair and reasonable manner, (ii) the Successful Bidder was selected in accordance with the Bid Procedures, and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest and best value for the Assets and is in the best interests of the Debtor and their estates.

The Debtor shall have accepted a Qualified Bid only when the Bankruptcy Court has approved the Successful Bid and entered the Sale Order and the Agent has accepted a Qualified Bid. Upon the closing of the Sale, (i) the Debtor shall promptly receive the Minimum Deposit held in escrow in connection with that Successful Bid and (ii) the Successful Bidder shall pay directly to the Debtor the balance of the Successful Bid.

Notwithstanding anything herein to the contrary, the transfer of the Assets shall not be free and clear, and will remain subject to: that certain recorded Declaration of Condominium of The Vie at Lake Eola, a Condominium, recorded in Official Records Book 09444, Page 3009, Public Records of Orange County, Florida and any timely and duly recorded amendments thereto and the Association's by-laws, articles of incorporation and rules and regulations (the "Condominium Declarations"); the provisions of the Florida Condominium Act, Chapter 718, Florida Statutes (the "Act");

and the provisions of Chapter 61B, Florida Administrative Code ("Administrative Rules"); and the 2009 and subsequent years' county *ad valorem* taxes.

In the event that, for any reason, the Successful Bidder fails to close the Sale contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtor shall be authorized to close the Sale with the Bidder that submitted the Next Highest Bid (the "Next Highest Bidder") in accordance with the foregoing procedures.

### RETURN OF MINIMUM DEPOSIT

The Minimum Deposits of all Bidders other than the Successful Bidder and the Next Highest Bidder required to submit a, deposit under these Bid Procedures shall be returned upon or within three (3) business days after the Auction. The Minimum Deposit of the Successful Bidder and the Next Highest Bidder shall be held until the closing of the Sale and the deposit of the Successful Bidder, or the Next Highest Bidder if the Assets are sold to it, will be applied to the amount of the Successful Bid.

Notwithstanding the above, if the Successful Bidder (or the Next Highest Bidder, if applicable) fails to close the Sale, such party's Minimum Deposit shall be forfeited to the Debtor.

Except as otherwise provided in the Purchase Agreement, the Seller will not be required to maintain any Minimum Deposit in an interest bearing account, but any interest earned on any Minimum Deposit will be remitted to the appropriate Bidder if the Minimum Deposit is returned to the Bidder pursuant to the above or applied to the amount of the Successful Bid. Minimum Deposits may only be used in accordance with the terms of these Bidding Procedures. Neither the Seller nor the Purchaser shall have any liability with respect to any Minimum Deposit.

### PAYMENT OF AUCTIONEER FEE

The Debtor shall pay the fee of the Auctioneer upon the closing of the Sale to the Successful Bidder. The Auctioneer's fee shall be deducted from the proceeds of the Sale.

### RESERVATION OF RIGHTS

Except as otherwise provided herein, the Debtor reserve the right to (i) determine which Bids are Qualified Bids; (ii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iii) reject any bid that is (a) inadequate or insufficient or (b) not in conformity with the requirements of the Bid Procedures Order or the requirements of the Bankruptcy Code.

### JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bidding Procedures, the Sale Hearing, the

Auction, the stalking Horse Agreement, and/or any other matter that in any way relates to the foregoing.

* * *