# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                      CASE NO.  6:09–bk-14833-KSJ

THE VUE-ORLANDO, LLC,                        CHAPTER 11

           Debtor.

_____/

## PLAN OF LIQUIDATION
## SUBMITTED BY THE VUE-ORLANDO, LLC

COUNSEL FOR DEBTOR

R. SCOTT SHUKER, ESQ.
VICTORIA I. MINKS, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801

February 2, 2010

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                        CASE NO. 6:09–bk–14833-KSJ

THE VUE-ORLANDO, LLC,                         CHAPTER 11

                    Debtor.

_____/

PLAN OF LIQUIDATION
SUBMITTED BY THE VUE-ORLANDO, LLC

THE VUE-ORLANDO, LLC ("The Vue" or "Debtor"), by and through its undersigned

counsel, hereby proposes the following plan of liquidation (the "Plan"), pursuant to Chapter 11

of the Code, 11 U.S.C. § 101, *et seq.*

## ARTICLE I. – DEFINITIONS

For the purpose of the Plan, the following terms will have the meaning set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a

kind specified in § 503(b) of the Code, and of a kind referred to in § 507(a)(1) of the Code,

including, without limitation, the actual, necessary costs and expenses incurred after the

commencement of the Chapter 11 Case of preserving the Debtor's Estate and operating the

business of the Debtor, including wages, salaries, or commissions for services, compensation for

legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the

Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United

States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative

Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of § 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed pursuant to § 1111(a) of the Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtor with the Bankruptcy Court pursuant to § 521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor on or before the Claims Objection Bar Date, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) scheduled in the list of equity security holders prepared and filed by Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Deposit Claim** shall mean a Priority Claim pursuant to Code § 507(a)(7), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged, nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean the bankruptcy case of The Vue-Orlando, LLC, which is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtor's Chapter 11 Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Estate** shall mean the Estate created pursuant to § 541 of the Code by the commencement of Debtor's Chapter 11 case and shall include all property of the Estate as defined in such Section.

**Bar Date** shall mean March 1, 2010, with respect to all Claims except those asserted by governmental entities, and May 3, 2010 with respect to Claims asserted by governmental entities.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Action** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy laws); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtor, any party named or identified in the Debtor's schedules or statement of financial affairs, any pleadings filed in these Chapter 11 cases; (c) the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity and any other indirect claim of any kind whatsoever; and (d) any and all potential claims as to the case styled: *Churchill Development Group, LLC and Michael S. Murray v. The Vue-Orlando, LLC, et*

*al.*, Case No. 08-CA-006383, Division 32, currently pending in the Circuit Court in and for Orange County, Floirda.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Claim Objection Bar Date** shall mean ninety (90) days after the Confirmation Date, which shall be the last date on which the Debtor can object to any Claim.

**Closing** shall mean the execution of all documents necessary to transfer the purchased assets to the Purchaser. The Closing shall occur on the Effective Date.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code.

**Confirmation Rate** shall mean 4% per annum.

**Creditor** shall have the same meaning as set forth in § 101(1) of the Code.

**Debtor** shall mean The Vue-Orlando, LLC.

**Deposit Claim** shall mean an unsecured Claim for deposits for the purchase of real estate entitled to priority under § 507(a)(7) of the Code.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court pursuant to § 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Effective Date** shall mean a date eleven (11) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; provided, however, that the Effective Date shall not occur until Debtor files the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 11th day after the entry of the Confirmation Order, provided that the notice has been filed.

**Equity Interest** shall mean any and all authorized equitable interests in the Debtor.

**Estate Assets** shall mean all the assets, property and cash of the Debtor, as defined in § 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceedings is pending.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of § 1124 of the Code.

**Insider** shall have the same meaning as set forth in § 101(31) of the Code.

**Intellectual Property** shall mean any and all pending, registered, common law and any other U.S. and foreign intellectual property of the Debtor, including, but not limited to, all copyrights, patent rights, trademark rights, service mark rights, trade dress rights, internet domain names, world wide web sites and all pages thereof, know-how, trade secret rights, proprietary or confidential technical information, procedures, formulae, databases, data skill, expertise, experience, materials, customer lists, licenses, information and other proprietary rights and processes, object and source codes, software and registration rights of mask works of circuit designs under the Semiconductor Chip Protection Act of 1984, as amended, and similar rights under corresponding foreign laws, whether now or hereafter owned by the Debtor or which any

person is under an obligation to assign to the Debtor, and all goodwill, improvements and modifications related thereto.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interests, or other equity instruments in the Debtor.

**IRS** shall mean the Internal Revenue Service.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, the Creditors' Committee, or any other party with standing to bring such a challenge.

**Liquidating Debtor** shall mean The Vue on and after the Effective Date. The sole manager shall be Mr. Terry Soifer.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Note A Lenders** shall mean Charter One Bank, NA, Comerica Bank, CommerceBank, NA, Great American Financial Resources, Inc., Great American Insurance Co., Key Bank, Mega International Commercial Bank of China, NY Branch, and Sovereign Bank.

**Note B Lenders** shall mean Key Bank and First Bank & Trust of Illinois.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid,

post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean October 1, 2009, the date on which the Petitioning Creditors filed their involuntary petition for relief under Chapter 7 of the Bankruptcy Code.

**Petitioning Creditors** shall mean Sovereign Bank, Comerica Bank, and Mega International Commercial Bank Co. Ltd., NY Branch.

**Plan** shall mean this Chapter 11 plan of liquidation, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Liquidating Debtor pursuant to the terms of the Plan, including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under § 507 of the Code.

**Priority Deposit Claim** shall mean a Claim of a deposit claim holder, other than an Administrative Claim, to the extent such Claim is entitled to priority payment under § 507(a)(7).

**Priority Tax Claim** shall mean a Claim of a governmental unit other than an Administrative Claim to the extent such Claim is entitled to priority in payment under § 507(a)(8).

*Pro Rata* means as to any Allowed Class 3 Claims as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of (i) the numerator of which is the amount of such Allowed Class 3 Claim and (ii) the denominator of which is the sum of (x) all Allowed Class 3 Claims as of such date plus (y) all Disputed Class 3 Claims as of such date.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to § 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in § 541 of the Code.

**Purchaser** shall mean the person or entity approved by the Bankruptcy Court to purchase the real and personal property pursuant to the Sales Procedure Order.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sale** shall mean the sale of real and personal property conducted pursuant to, and approved by, the Sales Procedures Order.

**Sales Procedures Order** shall mean the Order of the Bankruptcy Court approving Debtor's Motion to Approve Bid Procedures (Doc. No. 106). The Sales Procedures Order will be attached as **Exhibit "A"** to the Plan sent as part of the solicitation package.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable

nonbankruptcy laws. A Secured Claim which is challenged by the Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. § 101(51).

**Statutory Rate** shall mean the applicable rate of interest required to be paid on *ad valorem* real property taxes.

**Subordinated Lien** shall mean a Lien on an asset which is subject to all valid, existing and perfected Liens on such asset.

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under § 507(a)(8) of the Code.

**The Vue** shall mean the Debtor, The Vue-Orlando, LLC.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtor unclaimed for a period of six (6) months after any Distribution, or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of § 1124 of the Code.

**Units** shall mean the individual condominium units currently owned by The Vue.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Priority Claim, or an Administrative Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II. – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     Class 1 – Note A Lenders and Note B Lenders.

Class 1 consists of the Allowed Secured Claims of Note A Lenders and Note B Lenders. These Claims are secured by Liens on all assets of the Debtor, except Causes of Action (the "Note A and Note B Lenders' Property").

B.     Class 2 – Orange County Tax Collector.

Class 2 consists of the Allowed Secured Claim of the Orange County Tax Collector. The Claim is secured by a first priority Lien on the following Debtor's real property: 150 East Robinson Street, Orlando, Florida 32801.

C.     Class 3 – Unsecured Creditors.

Class 3 consists all Allowed Unsecured Claims in the Debtor's Bankruptcy Case.

D.     Class 4 – Equity Interests.

Class 4 consists of all equitable interests in the Debtor.

## ARTICLE III – ADMINISTRATIVE EXPENSES

A.     Administrative Claims.

1.     Nonordinary Course Administrative Claims.

a.     Any person, including any professional who has rendered services to the Debtor during the course of the Case, that asserts an Administrative Claim arising

before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; provided, however, that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim shall bar such a claimant from seeking recovery on such Claim.

      b.  Each holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. As provided for in Article VIII of the Plan, Debtor's cash-on-hand as of the Effective Date shall be first used to pay Nonordinary Course Administrative Claims. Thereafter, the Carve-out shall be used to satisfy such Allowed Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

2.     Ordinary Course Administrative Claims.     Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto.  An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.     Priority Tax Claims.

Except to the extent that the Holders and the Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid by the Purchaser, in an amount equal to the Allowed Priority Tax Claim.  The Payment shall occur at Closing.  Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.  The Debtor estimates that the filed amount of Priority Tax Claims, other than the Class 2 Claims, is less than $5,000.00.

C.     Priority Deposit Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Deposit Claim shall be paid, by the Purchaser, payments equal to the Allowed Priority Deposit Claim, which in no event, shall exceed $2,425, as delineated under 11 U.S.C. § 507(a)(7).  The Allowed Deposit Claims will be paid from the Sale at Closing.  The Debtor estimates that the filed amount of Priority Deposit Claims is approximately $25,000.00; however, the Debtor believes that the total amount of Allowed Priority Deposit Claims will be significantly reduced or not allowed in their entirety. To the extent a Holder of an Allowed Priority Deposit Claim has an Allowed Claim in excess of the priority amount of $2,425.00, such Allowed Claim shall be included in Class 3.

**ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES**.

There are no Classes of Claims or Interests that are Unimpaired.

**ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS**.

    A.    Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. The Liquidating Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

    B.    Class 1 – Note A Lenders and Note B Lenders.

In full satisfaction of their allowed Class 1 Claims, the Note A Lenders and the Note B Lenders shall be paid at Closing. If the Note A Lenders and Note B Lenders are not the Purchasers, they shall receive, in full satisfaction of their Allowed Class 1 Claim, the net proceeds of the Sale at Closing after payment of all closing costs, all Allowed Priority Claims, and the payments required to the holders of Allowed Claims of Class 2. If the Note A Lenders

and Note B Lenders are the Purchasers, their credit bid will be deemed in full satisfaction of their Allowed Class 1 Claims.

C.     Class 2 – Orange County Tax Collector,

In full satisfaction of its Allowed Secured Claim, Orange County shall be paid at Closing from the Sales Proceeds.

D.     Class 3 – Unsecured Claims.

Class 3 consists of all Allowed Unsecured Claims against the Debtor. In full satisfaction of the Allowed Class 3 Claims, holders of such claims shall receive a pro rata share of any net proceeds of the Causes of Action or any assets which are not encumbered by Liens and not acquired by the Purchaser. Distribution to Holders of Allowed Class 3 Claims is speculative and it is possible such parties will receive no distribution.

E.     Class 4 – Equity Interests.

Class 4 consists of all equitable interests in the Debtor. All currently issued and outstanding Equity Interests in the Debtor shall be extinguished on the Effective Date.

## ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Plan provides that the Debtor shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected by such date, then such unexpired lease or executory contract shall be deemed rejected. It is the position of the Debtor that the executory contracts listed in the respective Schedules of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which the Debtor was a party on the Petition Date. To the extent the Purchaser desires to take assignment of any

executory contracts, the Debtor will assume and assign such to Purchaser and the economic cure on any assigned contract will occur at Closing.

## ARTICLE VII. – MEANS OF IMPLEMENTATION.

1.      Sale.

The Plan is premised upon, and will be fully funded by, the Sale. Confirmation will be contemporaneous with Bankruptcy Court approval of the Sale, and Debtor will cease all active operations at Closing.

2.      Funds Generated During Chapter 11.

All cash in excess of operating expenses generated from operations until the Effective Date will be used for Plan Payments.

3.      Liquidating Debtor.

After Confirmation, the common stock of the Equity Holder shall be extinguished and the Liquidating Debtor will exist only to carry out remaining duties under the Plan.

4.      Operation of Liquidating Debtor.

On the Effective Date, and for the benefit of the Holders of Allowed Claims in Class 3, Mr. Terry Soifer shall be appointed as the manager of the Liquidating Debtor. All inner-company claims will be extinguished on the Effective Date. The Liquidating Debtor shall make any payments to Class 3 under the Plan. Debtor has not performed an analysis as to Causes of Action under Bankruptcy Code §§ 544-550 and have no estimate of potential recoveries. Any net proceeds from the Causes of Action will be paid *pro rata* to the Allowed Class 3 Claims. After such time, the Liquidating Debtor shall have no further obligation and

relinquishes all powers and authority. Mr. Soifer shall be paid at the rate of $250.00 per hour from the first proceeds of the Causes of Action or Lien Free assets.

5.     <u>Procedures for Resolving Disputed Claims.</u>

a.     <u>Prosecution of Objections to Claims.</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor shall have the exclusive right to make and file objections to all Claims. All objections commenced prior to the Confirmation Date shall be finished by Reorganized Debtors.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense, that the Debtor had immediately prior to the commencement of this Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of its Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.      Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtor's Cash and Assets, such that

the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

> e. Allowance of Claims and Interests

> (i). Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code ("Causes of Action") shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action.

> (ii). Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in this Cases, unless and until such Claim or Equity Interest is deemed allowed

under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

        f.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE VIII. – MISCELLANEOUS.

A.      Effect of Confirmation.

      1.      Elimination of Equity.

On the Effective Date, the Debtor's equitable interests shall be extinguished.

      2.      Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

      3.      Post-Confirmation Status Report. Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtor will file status reports with the Court explaining

what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

    4. <u>Preservation, Prosecution and Defense of Causes of Action</u>.

    The Debtor shall retain all Causes of Action. The Debtor shall have the right to pursue any and all Causes of Action, including all pending adversary proceeding, whether or not such causes of action have been commenced as of the Effective Date. The Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Debtor; provided, however, that the Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Debtor deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss, and/or decide not to prosecute any such litigation.

  B. <u>Conditions to Effectiveness</u>.

    The Effective Date shall not occur until all of the following conditions have been satisfied:

    1. The entry of the Confirmation Order by the Bankruptcy Court in the form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that, if an appeal of the Confirmation Order is filed, but no stay is granted in connection with the appeal, the Debtor may elect to permit the Effective Date to occur, notwithstanding the pendency of the appeal.

2.     Inclusion in the Confirmation Order of an injunctive provision: (i) staying, restraining, and enjoining all individuals or entities, from commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against the Debtor, or any property thereof, or against any of the Debtor's transferees, including the Liquidating Debtor, for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest.

3.     Closing on the Sale and payment of the Carve-Out.

Upon the satisfaction or waiver of each of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice, the Plan shall become Effective without further Order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

C.     Police Power.

Nothing in this Article VIII shall be deemed to affect, impair, or restrict any federal or state governmental until from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to the Confirmation Date, to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

D.     Retention of Jurisdiction.

After the Effective Date, the Liquidating Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or Liquidating Debtor in the ordinary course of business without a Bankruptcy Court order; provided, further, however, that, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters (except as to Released Claims and Released Parties) brought by the Debtor, including, without limitation, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549 and 550 of the Code;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Code or the Plan;

10. To protect the property of the Debtor's Estate from adverse claims or interference inconsistent with the Plan; and

11. To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement.

E.    Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.    Cramdown

The Liquidating Debtor reserves the right to seek confirmation of the Plan under § 1129(b) of the Code.

G.    Regulatory Approval and Retirement Plans.

It will not be necessary for the Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtor does not have any retirement plans.

H.    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Counsel for the Debtor:

R. Scott Shuker, Esquire
Latham Shuker Eden & Beaudine, LLP

390 N. Orange Avenue, Suite 600
Orlando, Florida 32801

Debtor:

The Vue-Orlando, LLC
Attn: Eric Moskowitz
Westminster Partners II, LLC
P.O. Box 624
Mundelein, Illinois 60060

United States Trustee:

United States Trustee
135 West Central Blvd.
Suite 620
Orlando, Florida 32801

I.     Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Liquidating Debtor, by wire transfer or by automated clearinghouse transfer from a domestic bank, at the option of the Liquidating Debtor, as applicable. Any payments remaining unclaimed after 180 days from the distribution of such payment shall become the property of the Liquidating Debtor, except that any payments to holders of Allowed Class 3 Claims shall be redistributed to holders of Allowed Class 3 Claims as part of the next Distribution.

J.     Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Liquidating Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental until, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Liquidating Debtor the

necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide to the Liquidating Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of the first notification by the Liquidating Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

  K. <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

    All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Curl 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

L.    Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution together with all interest earned thereon shall become the property of the Liquidating Debtor, except that any payments to Holders of Allowed Class 3 Claims shall be redistributed to holders of Allowed Class 3 Claims as part of the next Distribution. Thereafter, any unclaimed funds to holders of Allowed Class 5 Claims shall be donated to a 501(c)(3) organization. However, checks issued by the Liquidating Debtor will be null and void if not cashed within sixty days of the date of issuance.

M.    Fractional Cents and Equity; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents or distributions of fractional equity will be made under this Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding such fractions, such cash shall be treated as unclaimed property under the Plan.

N.    Transfer Taxes.

Under § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, including the documents and instruments with respect to the Closing and Sale under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

O.    Revocation and Withdrawal of the Plan.

The Liquidating Debtor reserves the right to withdraw the Plan at any time before entry of the Confirmation Order. If: (i) the Debtor revokes and withdraws this Plan; (ii) the Confirmation Order is not entered; (iii) the Effective Date does not occur; (iv) this Plan is not

substantially consummated; or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

P.    Modification of Plan.

The Liquidating Debtor may seek to amend or modify the Plan in accordance with 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan.

On or before the Effective Date, the Liquidating Debtor may issue, execute, deliver, or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate, and further evidence the terms and conditions of the Plan.

**DATED** this 2nd day of February 2010 in Orlando, Florida.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 0984469
Victoria I. Minks
Florida Bar No. 0064388
**Latham Shuker Eden & Beaudine, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
Tel. 407-481-5800
Fax. 407-481-5801
Attorneys for the Debtor

EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                                    **CASE NO. 6:09-14833-KSJ**

**THE VUE-ORLANDO, LLC,**                                 **CHAPTER 11**

                        **Debtor.**

_____

## ORDER GRANTING DEBTOR'S MOTION FOR ORDER
## APPROVING BID PROCEDURES, SALE PROCEDURES AND BID PROTECTIONS

**THIS CASE** came on for final evidentiary hearing on December 9, 2009 ("Hearing"), on the

motion of **THE VUE-ORLANDO, LLC** (the "Debtor"), for entry of an order: authorizing and

approving bid procedures, sale procedures and bid protections (the "Motion") (Doc. No. 55).  The

Hearing was scheduled as a final evidentiary hearing and notice of the Hearing was provided by

electronic transmission, facsimile, and/or United States first class mail to the secured creditors, the

twenty largest unsecured creditors, all parties in interest, and the United States Trustee.

Upon consideration of the Motion, the objections filed by Becky Kwitowski and Clifford

Kwitowski (the "Kwitowski Objection")(Doc. No. 83), First Bank and Trust Company of Illinois

("First Bank")(Doc. No. 88), and The Vue At Lake Eola Condominium Association, Inc. (Doc. No.

93)(collectively, the "Objections"), the Response of KeyBank, N.A. to the First Bank objection (Doc.

No. 92), the *ore tenus* modifications to the Motion announced by the Debtor at the Hearing (the

"Modifications"), the evidence taken at the Hearing, and the position of the United States Trustee

and all creditors and parties in interest present at the Hearing, and to the extent the Objections were

filed, all such objections have been compromised, withdrawn or overruled, and having found due and

proper notice of the Motion and Hearing, IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:

A.    This Court has subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334.

B.    Consideration of the Motion and the relief requested therein in a core proceeding pursuant to 28 U.S.C. §157(b)(2).

C.    Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Sufficient notice of the Motion and the Hearing was given in accordance with the applicable Bankruptcy Rules and Local Bankruptcy Rules of this Court and as otherwise required by applicable law.  No other or additional notice is required.

E.    The findings and conclusions set forth in this Order constitute the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

F.    The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.    The Motion and the Modifications are granted to the extent provided herein, the Kwitowski Objection is overruled, and all other objections are denied as moot based on the Modifications as set forth herein.

2.    The Bidding Procedures, Notice Procedures, and Sale Procedures are approved as set forth in **Exhibit "A"** attached hereto.

3.    Any party who intends to submit an offer to purchase the Assets must comply with the procedures set forth in **Exhibit "A"** of this Order, to be considered at the Auction and Sale Hearing.

EXHIBIT A

4.    The Debtor and/or the Debtor's Auctioneer shall have the bid packages, including the marketing materials, available for distribution in electronic form no later than January 10, 2010.

5.    All interested parties and potential bidders have until 4:00 pm on March 10, 2010 (the "Bid Deadline") to submit a Qualified Bid to the Notice Parties, as defined in the attached **Exhibit "A"**.

6.    All interested parties shall have the right to review Qualified Bids after such time that the Debtor and/or the Debtor's Auctioneer deems a bid a Qualified Bid, as defined in the attached **Exhibit "A", but such time shall be no later than March 11, 2010**. The Auction shall be held on or before March 15, 2010 at 11:00 A.M. The Auction shall not be delayed, cancelled or moved without an order from this Court.

7.    The initial minimum bid at the Auction must represent a purchase price of Twenty Million Dollars and No Cents ($20,000,000.00).

8.    Any bidder shall keep any information obtained from the Debtor, any other party, or their respective attorneys, representatives, employees, or affiliates, in connection with due diligence conducted related to the sale of the Assets, confidential.

9.    First Bank and Trust Company of Illinois and Keybank N.A. (collectively, the "Note B Lender") and the Pre-Petition Note A Lenders entered into a co-lender Agreement in February 2006 (the "Co-Lender Agreement"). The outstanding balance due to the Pre-Petition Note A Lenders under the Pre-Petition Secured Loan Document totals $31,411,319.05 as of the Petition Date, plus any interest, fees or other charges accruing thereon as authorized under the Pre-Petition Secured Loan Documents (the " Note A Pre-Petition Indebtedness"). The outstanding balance due to the Note B Lender totals $29,538,333.32 as of the Petition Date, plus any interest, fees or other charges accruing thereon (the "Note B Pre-Petition Indebtedness").

EXHIBIT A

10.    KeyBank, N.A., as the administrative agent under the Co-Lender Agreement, as further defined by the DIP Credit Agreement (the "Agent"), and pursuant to Section 363(k), shall have the exclusive right to credit bid on behalf of the Pre-Petition Note A Lenders and the Note B Lender.

11.    However, the entry of this Order shall have no impact on any and all rights and obligations of the parties under any enforceable agreement executed by and between the Pre-Petition Note A Lenders and the Note B Lender, including but not limited to the Co-Lender Agreement.

12.    The sale of the Assets shall include any and all personal property of the Debtor which shall be disclosed on the Debtor's schedules and shall be disclosed in bid packages to potential bidders.

13.    Within ten (10) days of entry of this Order, the Debtor shall amend its schedules identifying with specificity, any and all personal property which the Debtor intends to sell at the Auction. Within ten (10) days after the filing the schedule, the Vue at Lake Eola Condominium Association (the "Association") may file its objections related solely to the inclusion of designated personal property, if any, with this Court. If any objections are filed by the Association, a hearing shall be scheduled on the objections. Notwithstanding the foregoing, the Assets shall not include common elements or Association property as defined in Section 718.103, Florida Statutes. common areas, property of the existing unit owners or of the Association, personal property of the Association or which a unit owner (other than the Debtor) has an undivided interest or which may constitute an appurtenance, or such items which are required to be delivered to the Association at turnover in accordance with Section 718.301(4), Florida Statutes.

EXHIBIT A

14.     The sale of the Assets shall be free and clear of any and all security interests, mortgages, judgments, encumbrances, interests, restrictions of any kind and liens (collectively, "Interests"), except for 2009 and subsequent years' *ad valorem* taxes and except for: covenants, rights, and obligations arising from or out of that certain Declaration of Condominium of The Vue at Lake Eola, a Condominium recorded in Official Records Book 09444, Page 3009, Public Records of Orange County, Florida, any timely and duly recorded amendments thereto and the Association's by-laws, articles of incorporation and rules and regulations (the "Condominium Declarations"), the provisions of the provisions of the Florida Condominium Act, Chapter 718, Florida Statutes ("Act"); the provisions of Chapter 61B, Florida Administrative Code ("Administrative Rules");   The Interests, after the sale of the Assets and entry of a final Sale Order, shall attach to the proceeds of the purchase price paid by the Successful Bidder of the Assets in the order of their priority, with the same validity, force and effect which they now have as against the Debtor, subject to any claims and defenses of the Debtor may possess with respect thereto.

15.     The approval of the sale of the Assets to the Successful Bidder shall be heard on March 17, 2009 at 10:15 A.M. (the "Sale Hearing").

16.     The Pre-Filing Agreement referenced in Exhibit B to the Motion shall not be assumed by the Debtor by entry of this Order and the Court makes no determination as to the validity of or any rights of any parties regarding the Pre-Filing Agreement.

EXHIBIT A

17.    This Court finds that notice of the Hearing was sufficient and that this Court has jurisdiction over this matter.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**DONE and ORDERED** on December 28, 2009.

_____
**KAREN S. JENNEMANN**
United States Bankruptcy Judge

EXHIBIT A

Copies to:

The Vue-Orlando, LLC, Attn:  Eric Moskowitz, WESTMINSTER PARTNERS II LLC, PO Box 624, Mundelein, IL  60060;

R. Scott Shuker, Esq. and Justin M. Luna, Esq., Latham, Shuker, Eden & Beaudine, LLP (attorneys for Debtor), P.O. BOX 3353, Orlando, FL 32802-3353;

Sovereign Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL 33131;

Sovereign Bank, c/o Louis T. DeLucia, Schiff Hardin LLP, 900 Third Avenue, 23rd Floor, New York, NY 10022;

Comerica Bank, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL 33131;

Christopher G. Daniel, Charter One Bank, 53 State Street – MBS 970, Boston, MA  02109;

Mega International Commercial Bank Co., Ltd., NY Branch, c/o John B. Hutton III, Greenberg Traurig, 1221 Brickell Ave., Miami, FL  33131;

Jack Rubenbauer, Director, Great American Insurance Company, One East 4th St., 3rd Floor, Cincinnati, OH  45202;

Key Bank, c/o James S. Grodin, Foley & Lardner, P.O. Box 2193, Orlando, FL 32802-2193;

Churchill Development Group, c/o Robert S. Hoofman, P.O. Box 3146, Orlando, FL 32802-3146;

Richard B. Webber II, Zimmerman Kiser & Sutcliffe, 315 East Robinson St., Ste. 600, Orlando, FL 32801-4341;

First Bank & Trust Company, Attn:  Jeffrey W. Warren, P.O. Box 3913, Tampa, FL  33601-3913

All Creditors; and

U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, FL 32801.

## EXHIBIT A

### BIDDING PROCEDURES FOR THE ASSETS

#### BID PROCEDURES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest and best bids for the sale by the Debtor, The Vue -Orlando, LLC "Seller" or the "Debtor") of certain personal property and real property located in 150 East Robinson Street, Orlando, Florida, as more particularly described on **Exhibit A** attached to the original of the Bid Procedures Motion and the schedule of personal property as disclosed on Schedule B of the Debtor's filed schedules and any amendments thereto (collectively, the "Assets"). As set forth in more detail below, the Debtor will conduct an auction (the "Auction") for the sale (the "Sale") of the Assets if one or more Qualified Bids (as defined below) are timely submitted, which Sale is subject to the Order Granting Debtor's Motion for Order Approving Bid Procedures, Sale Procedures and Bid Protections ("Bid Procedures Order")(Doc. No.    ).

#### BREAK-UP FEE

The Debtor has retained the right, subject to the prior approval of the Agent, as defined in the Bid Procedures Order, to enter into a "stalking horse" agreement (the "Stalking Horse Agreement"), with a bidder to be selected by the Debtor, with the prior written approval of the Agent (the "Stalking Horse Bidder"), governing the purchase of the Assets by the Stalking Horse Bidder. The Stalking Horse Agreement may provide for a break-up fee plus fees and expenses incurred by the Stalking Horse Bidder in connection with the Auction and Sale to be paid to the Stalking Horse Bidder in the event that the Stalking Horse Bidder is not the purchaser of the Assets (the "Break-Up Fee"). The amount of the Break-Up Fee may be considered by the Debtor in determining the highest and best bid and the net value that the Debtor and their estates will realize at any Auction.

#### OBTAINING DUE DILIGENCE ACCESS

The Debtor (or a broker retained by the Debtor) shall afford each Bidder reasonable due diligence information, including, without limitation, the due diligence information provided to the Stalking Horse Bidder. Upon request, the Debtor shall provide site access to each potential bidder to the extent requested to conduct reasonable due diligence. The due diligence period will end on the Bid Deadline (as defined below).

The Debtor shall give each potential bidder reasonable access to all written due diligence information provided to another potential bidder, and shall provide substantially the same site access to each bidder. The Debtor reserves the right to require that potential bidders sign a form of nondisclosure agreement approved by the Debtor and the Agent as a condition to receiving due diligence information. The Debtor shall coordinate all reasonable requests for additional information and due diligence access from potential bidders through its court approved Auctioneers and other professionals.

1

No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

## BID DEADLINE

The deadline for submitting bids by a Bidder shall be March 10, 2010 at 4:00 p.m. (Eastern Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Bidder that desires to make a bid shall deliver written copies of its bid to (i) the Debtor, c/o The Vue-Orlando, LLC, 150 East Robinson Street, Orlando, Florida; Attn: Charles Johanns; (ii) the Debtor's Auctioneer, Fisher Auction Company Inc., 619 East Atlantic Boulevard, Pompano Beach, Florida 33060; Attn Lamar Fisher; Fax: 954-782-8143; (iii) the Debtor's bankruptcy counsel, Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Avenue, Suite 600, P.O. Box 3353, Orlando, Florida, 32802-3353; Attn: R. Scott Shuker and Justin M. Luna; Fax: 407-481-5801; (iv) counsel to the Agent, KeyBank National Association, Foley & Lardner, LLP, 111 North Orange Avenue, Suite 1800, Orlando, Florida 32801; Attn: James Grodin, Esq.; Fax: 407-648-1743; (v) counsel for all other Pre-Petition Note A Lenders, Schiff Hardin LLP, 900 Third Avenue, Twenty-Third Floor, New York, NY 10022, Attn: Louis T. DeLucia and Alyson M. Fiedler, Fax: 212-753-5044; (vi) counsel for First Bank and Trust Company of Illinois, Bush Ross, P.A., 1801 N. Highland Avenue, Tampa, Florida 33602, Attn: Jeffrey Warren and Adam Lawton Alpert, Fax: 813-223-9620; and  (vii) counsel for any committee appointed in these cases (the "Notice Parties").

## QUALIFIED BID REQUIREMENTS

A bid must be a written irrevocable offer (i) stating that the bidder offers as a starting bid of at least $20,000,000 (the "Initial Bid") to consummate a Sale; (ii) confirming that the offer shall remain open and irrevocable until the closing; of a Sale to the Successful Bidder or the Next highest Bidder (both as defined below); (iii) enclosing a copy of the proposed bid; and (iv) enclosing a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtor and the Agent equal to a percentage of the amount of the Qualified Bid to be set by the Debtor (after consultation with the Agent)(the "Minimum Deposit"). No liens of any creditors of the Debtor shall attach or be deemed to attach to the Minimum Deposit until and unless a Sale to the bidder making the Minimum Deposit occurs or the bidder forfeits its deposit in accordance with the procedures set forth herein. All bids will be considered, but the Agent reserves its right to reject any or all bids.

To be a Qualified Bid, any bid for the Assets must:

(a)    be a written irrevocable offer from a bidder (i) stating that the bidder offers to consummate a Sale; (ii) confirming that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder (as defined below); (iii) enclosing a copy of the proposed bid; and (iv) enclosing a certified or bank check,

2

wire transfer, or letter of credit reasonably acceptable to the Debtor and the Agent equal to the Minimum Deposit;

(b)     provide for the purchase of all of the Assets and such purchase may not have any conditions to close not present in the Stalking Horse Agreement or Asset Purchase Agreement provided by the Debtor (whichever is applicable), unless waived by the Debtor and the Agent;

(c)     not be conditioned on due diligence or financing;

(d)     not request or entitle the subsequent bidder to any break-up fee or expense reimbursement;

(e)     disclose the identity of each person and/or entity bidding for the Assets or participating in connection with a bid, and the terms of any such participation;

(f)     contain written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale;

(g)     offer a cash amount set by the Debtor, or other consideration acceptable to the Debtor and the Agent;

(h)     be accompanied by an acknowledgement that the Bidder has had an opportunity to conduct due diligence, does not require further due diligence and has relied solely upon its own independent review in making its bid; and

(i)     be accompanied by a signed contract substantially in the form of the Stalking Horse Agreement and marked to show any changes made thereto.

A bid received from a Bidder that meets the requirements set fourth above will be considered a "Qualified Bid," and the highest and best such bid, the "Highest Qualified Bid." A Qualified Bid shall not be a bid of an "insider" or "affiliate" of the Debtor under section 101 of the Bankruptcy Code unless otherwise consented to by the Agent, in writing. All Qualified Bids shall be available for review by any party in interest, subject to the terms of confidentiality set forth in the Order of the Bankruptcy Court approving the Bid Procedures.

## AUCTION

If at least one Qualified Bid by a bidder other than the Stalking Horse Bidder is received by the Bid Deadline, the Auction with respect to the Assets shall take place at the date and time designated by the Debtor or the Debtor's Auctioneer (but no later than March 15, 2010 at 11:00 a.m. (Eastern Time). The Debtor, with the consent of the Agent, may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the Sale Hearing, only after approval by the Bankruptcy Court and

3

serving such notice on all Auction Notice Parties (as such term is defined in the Procedures Motion). The Debtor will provide appropriate notice to each of the bidders and other invitees of the, date, time, and place for the Auction.

If no Qualified Bid other than the Stalking Horse bid is received by the Bid Deadline, then the Auction will not be held, and, pursuant to the Stalking Horse Agreement, but subject to the entry of the Sale Order, the Stalking Horse Bidder shall purchase, acquire and accept from Seller, and the Seller shall sell, transfer, assign, convey and deliver to the Stalking Horse Bidder (or its designated affiliate or affiliates) all of Seller's right, title and interest in, to and under the Assets, free and clear of all liens (except for the Permitted Exceptions as defined in the Stalking Horse Agreement) to the extent permissible under section 363(f) of the Bankruptcy Code, and free and clear of any claims or interests the Debtor may have had, except for the obligations, rights, and covenants expressly provided in the Bid Procedures Order.

A party may participate at the Auction only if it is a bidder who has submitted a Qualified Bid. The Debtor will evaluate all Qualified Bids received and, with the consent of the Agent, may select the Qualified Bid that reflects the highest and best offer, as determined by the Debtor and the Agent as the "Starting Auction Bid" for the Assets.

The bidding at the Auction shall start at the Initial Bid as disclosed by the Debtor to all bidders prior to commencement of the Auction. The bidding will continue in incremental amounts of not less than $100,000 (unless otherwise agreed to in writing by the Agent), until there is a Successful Bid (as defined below) and a Next Highest Bid (as defined below). At the Auction, Bidders will be permitted to increase their bids. All bids subsequent to the Starting Auction Bid, whether oral or written, shall be deemed to constitute valid modifications or amendments to the signed contract previously submitted by such bidder. Any party holding a valid lien against the Assets shall be entitled to credit bid at the Auction pursuant to section 363(k) of the Bankruptcy Code, and the Agent shall have the exclusive right to credit bid on behalf of the Pre-Petition Note A Lenders and Note B Lender as defined in the Bid Procedures Order, provided, however, that to the extent applicable, such credit must be accompanied by a cash payment equal to (a) the amount necessary to pay liens senior to the liens of the secured lender that is credit bidding; and (b) the amount necessary to pay the excess cash portion of the Stalking Horse Bid and the Break-Up Fee. The Agent shall have the exclusive right to credit bid up to the full amount permitted by the Bankruptcy Code on behalf of the Debtor's Pre-Petition Note A Lenders[1] and Note B Lenders, as defined by the Bid Procedures Motion. Any credit bid submitted at the Auction will be on substantially the same terms as contained in the Stalking Horse Agreement.

Prior to concluding the Auction, the Debtor shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the sale process· and the best interests of the Debtor's estates and creditors and (ii) determine, subject to the approval of the Agent, which bid is the highest and best bid (the

"Successful Bid") and the next highest and best offer after the Successful Bid (the "Next Highest Bid"). In evaluating bids, the Debtor may consider bids for less than all of the Assets, as well as bids for all of the Assets, so as to maximize the value received for the Assets.

At or prior to the Auction, the Debtor, with the consent of the Agent, may adopt other rules for the Auction that, in their reasonable judgment, will better promote the goals of the Auction. All such rules shall be fully disclosed to all bidders and will provide that the procedures must be fair and open. Nothing herein shall prohibit the Debtor from meeting privately with any bidders to negotiate the terms of the bids.

Immediately upon selection of the Successful Bid, the bidder making the Successful Bid (the "Successful Bidder") shall provide the Debtor with the Minimum Deposit in immediately available funds to be placed in escrow.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered. Neither the Debtor nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

### ACCEPTANCE OF THE SUCCESSFUL BID

Following the Auction or a determination that the Stalking Horse, if any, is the Successful Bidder, but not later than March 17, 2010, the Sale Hearing will be held. If a timely objection to the Auction Notice is received, the Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which the Debtor will seek certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted in a fair and reasonable manner, (ii) the Successful Bidder was selected in accordance with the Bid Procedures, and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest and best value for the Assets and is in the best interests of the Debtor and their estates.

The Debtor shall have accepted a Qualified Bid only when the Bankruptcy Court has approved the Successful Bid and entered the Sale Order and the Agent has accepted a Qualified Bid. Upon the closing of the Sale, (i) the Debtor shall promptly receive the Minimum Deposit held in escrow in connection with that Successful Bid and (ii) the Successful Bidder shall pay directly to the Debtor the balance of the Successful Bid.

Notwithstanding anything herein to the contrary, the transfer of the Assets shall not be free and clear, and will remain subject to: that certain recorded Declaration of Condominium of The Vie at Lake Eola, a Condominium, recorded in Official Records Book 09444, Page 3009, Public Records of Orange County, Florida and any timely and duly recorded amendments thereto and the Association's by-laws, articles of incorporation and rules and regulations (the "Condominium Declarations"); the provisions of the Florida Condominium Act, Chapter 718, Florida Statutes (the "Act");

EXHIBIT A

and the provisions of Chapter 61B, Florida Administrative Code ("Administrative Rules"); and the 2009 and subsequent years' county *ad valorem* taxes.

In the event that, for any reason, the Successful Bidder fails to close the Sale contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtor shall be authorized to close the Sale with the Bidder that submitted the Next Highest Bid (the "Next Highest Bidder") in accordance with the foregoing procedures.

## RETURN OF MINIMUM DEPOSIT

The Minimum Deposits of all Bidders other than the Successful Bidder and the Next Highest Bidder required to submit a, deposit under these Bid Procedures shall be returned upon or within three (3) business days after the Auction. The Minimum Deposit of the Successful Bidder and the Next Highest Bidder shall be held until the closing of the Sale and the deposit of the Successful Bidder, or the Next Highest Bidder if the Assets are sold to it, will be applied to the amount of the Successful Bid.

Notwithstanding the above, if the Successful Bidder (or the Next Highest Bidder, if applicable) fails to close the Sale, such party's Minimum Deposit shall be forfeited to the Debtor.

Except as otherwise provided in the Purchase Agreement, the Seller will not be required to maintain any Minimum Deposit in an interest bearing account, but any interest earned on any Minimum Deposit will be remitted to the appropriate Bidder if the Minimum Deposit is returned to the Bidder pursuant to the above or applied to the amount of the Successful Bid. Minimum Deposits may only be used in accordance with the terms of these Bidding Procedures. Neither the Seller nor the Purchaser shall have any liability with respect to any Minimum Deposit.

## PAYMENT OF AUCTIONEER FEE

The Debtor shall pay the fee of the Auctioneer upon the closing of the Sale to the Successful Bidder. The Auctioneer's fee shall be deducted from the proceeds of the Sale.

## RESERVATION OF RIGHTS

Except as otherwise provided herein, the Debtor reserve the right to (i) determine which Bids are Qualified Bids; (ii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iii) reject any bid that is (a) inadequate or insufficient or (b) not in conformity with the requirements of the Bid Procedures Order or the requirements of the Bankruptcy Code.

## JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bidding Procedures, the Sale Hearing, the

EXHIBIT A

Auction, the stalking Horse Agreement, and/or any other matter that in any way relates to the foregoing.

* * *